***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The date of the accident was April 23, 2000.
2. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
3. The employment relationship existed between plaintiff and defendant-employer at all relevant times to this claim.
4. The average weekly wage is at issue for purposes of this hearing.
5. This is an accepted claim arising out of an injury by accident occurring on April 23, 2000.
6. At the time of injury, plaintiff was working at the Eaton Corporation Plant in Laurinburg, North Carolina. Plaintiff had been placed in that position by the defendant-employer, which operates as an employment business. While plaintiff performed work at Eaton Corporation, defendant-employer paid his wages, deducted and/or paid any applicable taxes and covered plaintiff under its workers' compensation policy.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born October 18, 1968.
2. Plaintiff was at all times relevant hereto, an employee of defendant-employer Olsten Staffing Services (a/k/a Adecco Staffing Services) and was not an employee of Eaton Corporation under the Workers' Compensation Act.
3. Plaintiff was working for the client of defendant-employer Olsten, Eaton Corporation, when he sustained a crush injury to his left hand on April 23, 2000.
4. Plaintiff has been unable to earn wages in that or any other employment since that time as a result of the compensable injury.
5. Plaintiff had been employed by defendant-employer Olsten approximately seven weeks prior to his injury. During the first two weeks, plaintiff earned $7.00 per hour. During the next four weeks, plaintiff earned $7.25 per hour. During his final week, plaintiff earned $7.72 per hour. Plaintiff worked overtime during three of the seven weeks of his employment.
6. Defendant-employer Olsten accepted this claim as compensable by Form 60 dated May 1, 2000. Since that date defendants have paid indemnity compensation at an average weekly wage of $339.68 yielding a compensation rate of $226.46 which is based on plaintiff's average hours worked per week (44 hours) and the highest hourly rate plaintiff was paid ($7.72).
7. As shown in the Form 22, Statement of Days Worked and Earnings ofInjured Employee, attached as Exhibit A to the Statement of Ms. Melissa Weaver, plaintiff earned a total of $2,295.52 over the course of the 49 days he worked for defendant — employer Olsten. Calculation yields an average daily wage of $46.85 per day, an average weekly wage of $327.93, and a compensation rate of $218.63. Thus, plaintiff has been receiving from defendant-employer Olsten, a greater weekly compensation amount ($226.46), than is even indicated by plaintiff's own Form 22 ($218.63).
8. With regard to reviewing the methods for computing average weekly wages pursuant to N.C. Gen. Stat. § 97-2(5), it is noted that plaintiff did not work for defendant-employer Olsten for 52 weeks prior to his injury, and there is no evidence that plaintiff lost more then seven consecutive calendar days at one or more times during employment with defendant-employer Olsten. Thus, these calculation methods to which court decisions variously refer as method 1 or method 2 are not applicable or appropriate as the stated threshold is not met in the case herein and, thus, they would be unfair or unjust to either party. However, the next approach to which court decisions variously refer as method 2 or method 3 appears appropriate. Since the "employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period" ($2,295.52) "by the number of weeks and parts thereof during which the employee earned wages" (7), yields $327.93 as the average weekly wage and $218.63 as the compensation rate. This rate will prevail "provided results fair and just to both parties will be thereby obtained".
9. This result is fair to both parties. The first consideration which has to be acknowledged is that plaintiff himself chose to work for defendant-employer Olsten, a staffing company providing "temporary" employees to its clients, plaintiff was a "temporary" employee and defendant-employer Olsten was paying plaintiff as "temporary" help. Plaintiff voluntarily accepted work, which he knew was to be "temporary". Further, there is no evidence plaintiff would have even received any more raises as an employee of defendant-employer Olsten than he had received as of the date of his injury.
10. To use an average weekly wage of a permanent full time employee of Eaton Corporation verses an average weekly wage of an employee of defendant-employer Olsten, as proposed by plaintiff, is inappropriate and unfair to defendant-employer. It is speculative that plaintiff would have ever become a permanent employee of Eaton Corporation. While plaintiff had almost worked the required number of hours and had almost met the production quota, both of these conditions are merely minimum requirements to be considered eligible for possible full time permanent employment with Eaton Corporation. There was no promise or guarantee by defendant-employer Olsten or Eaton Corporation that plaintiff would have been made a permanent Eaton Corporation employee. Plaintiff's testimony to the contrary is not accepted as credible. There is no evidence that Eaton Corporation only hired employees through a temporary staffing company. There is no evidence that Eaton Corporation either wanted or needed a permanent employee, or indeed, if there was a need, that plaintiff would have been the one hired. Further, each client of defendant-employer Olsten had different hiring criteria, such as a required drug screen or a physical examination. It is within the discretion of the client of defendant-employer Olsten whether the temporary employee will be hired full time permanently. There is no way to predict or foresee that plaintiff would have been working for Eaton Corporation as a permanent employee and thereby earning a higher wage had he not sustained an injury. Thus, the average weekly wage for Ms. Wooten, who plaintiff contends is a comparable employee, is not an appropriate wage to use here since she actually worked as a permanent full time employee for Eaton Corporation and not as a temporary employee for defendant-employer Olsten.
11. It is not impractical, unjust or unfair to either party to compute plaintiff's average weekly wage with regard to his temporary employment versus speculative future permanent employment. Thus, as indicated in Finding of Fact 8 above, plaintiff's average weekly wage is $327.93 and his compensation rate is $218.63.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has been receiving Workers' Compensation benefits at a higher average weekly wage and resulting compensation rate as was determined by defendant-employer Olsten at the time of the injury. Given the facts of this case and by fair and just application of N.C. Gen. Stat. § 97-2(5), the average weekly wage and compensation rate shall be reduced to $327.93 and $218.63, respectively. Thus, defendants' are entitled to a credit for overpayment pursuant to N.C. Gen. Stat. §97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff benefits at the compensation rate $218.63 subject to defendants' credit for overpayment until further order of the Commission.
2. Every fourth check from plaintiff's ongoing benefits shall be forwarded directly to plaintiff's counsel for attorney fees.
3. Each side shall bear its costs of this action.
This the 27th day of March 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/mb